## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **API TECHNOLOGIES, LLC,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **NO.     2:09-cv-147** |
| | § | |
| **FACEBOOK, INC., et. al.** | § | **Jury Trial Demanded** |
| | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTS ...................................................................................................................... 2

        A.      Overview of This Action ............................................................................... 2

        B.      The Majority of the Parties' Witnesses and Evidence Are in Northern
                California ........................................................................................................ 3

                1.      Yahoo!'s Witnesses and Evidence Are in Northern California ................. 3

                2.      Google's and Android's Witnesses and Evidence Are in Northern
                        California ........................................................................................ 4

                3.      Technical Evidence and Witnesses Related to Best Buy's Accused
                        Product Are in Northern California, and Its Remaining Sources of
                        Evidence Are in Minnesota............................................................. 5

                4.      API Technologies Has No Witnesses or Known Evidence in This
                        District............................................................................................ 6

        C.      There Is No Patent-Related Witness or Known Evidence in This District............ 7

III.    THIS CASE SHOULD BE TRANSFERRED  TO THE NORTHERN DISTRICT
        OF CALIFORNIA ................................................................................................... 8

        A.      A Case Must Be Transferred When the Witnesses and Evidence Are
                Concentrated in Another District ................................................................. 8

        B.      This Action "Might Have Been Brought" in the Northern District of
                California ...................................................................................................... 10

        C.      The Private Interest Factors Heavily Favor Transfer to Northern California ...... 10

                1.      The Northern District Of California Is More Convenient for Most
                        of the Witnesses ........................................................................... 11

                2.      The Northern District of California Possesses Usable Subpoena
                        Power While This Court Does Not ............................................... 12

                3.      The Majority of the Documentary Evidence is Maintained or
                        Accessible in  The Northern District of California................... 13

        D.      The Public Interest Factors Favor Transfer to the Northern District of
                California ...................................................................................................... 14

                1.      Northern California Has a Greater Interest in this Case ...................... 14

                2.      The Remaining Public Interest Factors Are Neutral.............................. 15

IV.     CONCLUSION...................................................................................................... 15

41063-0125/LEGAL17941948

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AllVoice Developments v. Microsoft Corp.,* Docket No. 6:09-cv-366
(E.D. Tex. April 8, 2010).................................................................................... 9

*eTool Development, Inc. v. National Semiconductor, Corp.*,
Docket No. 2:08-cv-196 (E.D. Tex. Mar. 12, 2010).................................... 2, 10, 11

*In re Fine Paper Antitrust Litigation*, 685 F.2d 810 (3d Cir. 1982) ............................ 10

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)......................................... passim

*In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ......................... 9, 12, 14

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) ...................................... 9, 14

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ........................... 8, 9, 14, 15

*In re Volkswagen AG.,* 371 F.3d 201 (5th Cir. 2004) ................................................ 12

*In re Volkswagen of Amer., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc)........... 8, 9, 12

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006) ...... 11

*Shifferaw v. Emson USA*, Docket No. 2:09-cv-54 (March 18, 2010) .......................... 10

**Statutes**

28 U.S.C. § 1391(c) ................................................................................................ 10

28 U.S.C. § 1400(b) ................................................................................................ 10

28 U.S.C. § 1404(a) .............................................................................................. 1, 15

**Regulations and Rules**

Fed. R. Civ. P. 45(c)(3)(A)(ii) ................................................................................ 12

41063-0125/LEGAL17941948

# I.    INTRODUCTION

The four remaining defendants in this case respectfully move pursuant to 28 U.S.C.

§ 1404(a) to transfer this action to the Northern District of California ("Northern California").

Transfer is warranted under § 1404(a) and recent Federal Circuit authority because there are no

material witnesses residing in this district and, in contrast, Northern California is far more

convenient for the majority of the witnesses and the evidence.  Indeed, three of the four

defendants—Yahoo! Inc., Google Inc., and Android, Inc.—are headquartered in Northern

California.  The last defendant—Best Buy—is from Minnesota, but critical portions of its

accused product were designed and are managed by a non-party to this lawsuit, Mashery, Inc.,

headquartered in Northern California (less than one mile from the San Francisco Federal

Courthouse).  Other non-party witnesses believed to have relevant invalidity evidence are also

located in Northern California or closer to that district than to the Eastern District of Texas.  The

plaintiff is a nonpracticing entity with no witnesses in this district.  Witness location

overwhelmingly favors Northern California.

As for relevant documents, none are known to exist in or even near this district.  All or

nearly all of the documents, data, and evidence related to Yahoo!'s, Google's, and Android's

accused products, general operations, marketing, financials, and licensing practices are stored or

electronically accessed in Northern California.  Mashery's evidence is maintained or accessed at

its sole location, in Northern California.  API has no documents or evidence related to the

conception, reduction to practice, design, development, or prior art sales or disclosures of the

claimed invention.  The location of the evidence also favors Northern California.

To the extent there are witnesses and evidence outside Northern California, they are

dispersed in locations other than this district.  Best Buy's party witnesses and evidence are in

Richfield, Minnesota.  API Technologies' only relevant employee resides in Dallas, and the

records API filed with the State of Texas show that API's business address is in Dallas as well. The named inventors live in California, Arkansas, Maine, Wisconsin, and Ireland, and the attorneys that prosecuted the patent-in-suit reside in Washington State and Washington DC. Non-parties believed to have invalidity evidence are in Washington, Arizona, Minnesota, and Wisconsin. Such a distribution of witnesses and evidence cannot support plaintiff's chosen venue. As this Court stated in *eTool Development, Inc. v. National Semiconductor, Corp.*, "the centrality of [this] Court's location is irrelevant to the analysis in this case" because there are no witnesses in this district.

Northern California has the highest concentration of relevant witnesses and evidence. There are no witnesses and no known evidence in this district. Northern California is therefore a "clearly more convenient" forum, and this case should be transferred to Northern California.

## II.   FACTS

### A.   Overview of This Action

This is a patent case. Plaintiff ("API") alleges that it is the owner, through purchase, of the patent-in-suit (U.S. Patent No. 6,859,699, or "the '699 patent"). The '699 patent discloses a system for the electronic distribution of data related to vehicle diagnostics (*e.g.*, the distribution of alignment specifications for various cars). '699 patent at 4:19-29. The claims generally recite a remote request for data (often "service data") and the sending of a "product code," data, and a "license code" that contains information related to the product code. *See, e.g.,* '699 patent at claims 15, 24. The claims were allowed because the patent examiner was unaware of prior art containing the final element – a "license code" that contains information related to a product code. *See* Exhibit A, Declaration of Ryan McBrayer, Exh. RM1, Amendment filed May 11, 2004, at 14-15 and the September 3, 2004, Examiner Statement of Reasons for Allowance at 2.

API asserts the '699 patent against defendants' use of "application programming interfaces" and, more specifically, situations where defendants send data to users over the Internet. *See, e.g.* McBrayer Decl., Exh. RM2 (API's P.R. 3-1 and 3-2 Disclosures) at 3-6. As an example, API has asserted that an application programming interface (developed by Google in Northern California) allowing non-party developers to utilize Google Earth data infringes the patent. *Id.* at 6.

This case is in its early stages. API served its infringement contentions on April 6, 2010, less than one month ago, and the parties exchanged initial disclosures 10 days ago. Dkt. Nos. 165, 169-172. Defendants filed this motion a little more than one month after the Court dismissed The Dun & Bradstreet Corporation and Hoovers Inc. from this case. *See* Dkt No. 162.

**B.**     **The Majority of the Parties' Witnesses and Evidence Are in Northern California**

      **1.**     **Yahoo!'s[1] Witnesses and Evidence Are in Northern California**

API accuses 23 different Yahoo! products of infringement.[2] Exh. B, Declaration of Neal Sample Decl., ¶ 2; McBrayer Decl, Exh. RM2 at 3. Material witnesses will include those familiar with the design and operation of these accused products and those with knowledge of Yahoo!'s relevant marketing, finances, licensing, and sales. As shown in the declaration of Neal Sample, the seven witnesses with the most knowledge of those topics all have offices and work

---

[1]    Although API originally filed suit against twenty-four defendants, only Yahoo!, Google, Android, and Best Buy remain.

[2]    API accuses the following 23 Yahoo! products: Yahoo! Search Marketing API; Yahoo! Boss API; Yahoo! Site Explorer APIs; Yahoo! Hotjobs Web Services; Yahoo OAuth API; Yahoo Contacts API; Yahoo! Profiles API; Yahoo! Connections API; Yahoo! Social Directory; Yahoo! MyBlogLog API; Yahoo! Status API; Yahoo! Updates API; Yahoo! Flickr Authentication; Yahoo! Music API; Yahoo! Answers API; Yahoo! Mail Web Service APIs; Yahoo! Browser-Based Authentication (BBAuth); Yahoo! Maps & Location-Based Services; Yahoo! Geocoding API; Yahoo! Placemaker; Yahoo! Search BOSS (Build Your Own Search Service); Flickr Web Services; Web Services for APT from Yahoo!.  McBrayer Decl, Exh. RM2.

at Yahoo!'s headquarters in Sunnyvale, California (approximately 13 miles from the Federal

Courthouse in San Jose and 50 miles from the San Francisco courthouse).  Sample Decl., ¶ 7-9.

Similarly, all or nearly all of Yahoo!'s documents and other evidence is located in, or

accessible from, its Sunnyvale offices.  *Id.* ¶¶ 11-12.  For example, Yahoo! maintains the source

code for the accused products on secure servers located in, or accessible from, Sunnyvale.  *Id.*

¶ 12.  Similarly, Yahoo! maintains its licensing documents and financial information in

Sunnyvale.  *Id.* ¶ 11.

Yahoo! has no employees in the Eastern District of Texas, maintains no documents in

this district, and knows of no witness or evidence in this district.[3]  *Id.* ¶¶ 5, 10-12.

**2.      Google's and Android's Witnesses and Evidence Are in Northern California**

Like Yahoo!, Google and Android are headquartered in Northern California.  Exh. C,

Declaration of Kris Brewer, ¶ 3-5. The majority of the domestic witnesses with knowledge of the

25 Google products API accuses of infringement[4] either work at Google's headquarters in

Mountain View, California or work in locations far closer to Northern California than to this

district.  *Id.* ¶ 7-8.   In particular, 10 of the 11 people in the United States with the most technical

knowledge of the 25 accused Google products work in Google's Mountain View, California

headquarters or closer to Northern California than to East Texas.  *Id.* ¶ 7.  The two individuals

---

[3]  Yahoo! has an office in Richardson, Texas, which is in the Northern District of Texas. *Id.* ¶ 5.  That office is primarily a data center, and the individuals in that office are not involved in the development or management of any of Yahoo!'s accused products.  *Id.*

[4]  API accuses the following 25 Google products: Maps API, Static Maps API, Earth API, AdWords API, Base Data API, YouTube API, Client Login API, AuthSub API, Admin Settings API, Calendar Data API, Calendar Resources API, Email Migration API, Email Settings API, Contacts Data API, Shared Contacts API, User Profiles API, Finance Data API, Picasa Web Albums (PWA) API, Webmaster Tools API, Documents List Data API, Spreadsheets Data API, Provisioning API, Sites Data API, Reporting API, and the Android MapView class.  Brewer Decl. ¶ 2; McBrayer Decl., Exhs. RM2 at 5-6.

- 4 -

with the most knowledge of Google and Android's relevant finances, sales, and marketing work at Google's Mountain View, California headquarters. *Id*.

All of Google's and Android's documents and other evidence is located in, or accessible from, their Mountain View offices in Northern California. *Id*. ¶¶ 1, 10-12. Google and Android maintain their licensing, marketing, financial, and sales documents in Mountain View as well. *Id*. ¶ 10-11.

Google has one employee who telecommutes from the state of Texas, but not in the Eastern District of Texas, who has some limited knowledge of a protocol related to certain of the accused Google products.[5] *Id*. ¶ 9. The person with the greatest amount of relevant knowledge of that protocol, however, is in Northern California. *Id*.

None of the accused Google products were developed or are managed in this district. *Id*. ¶¶ 8-12. Google has no employees in the Eastern District of Texas, maintains no documents in this district, and knows of no relevant witness or evidence in this district.[6] *Id*. ¶¶ 8-12.

> **3.    Technical Evidence and Witnesses Related to Best Buy's Accused Product Are in Northern California, and Its Remaining Sources of Evidence Are in Minnesota**

Best Buy's principal place of business is in Minnesota. Exh. D, Declaration of Kevin Matheny ¶ 2. Important witnesses and evidence concerning the technical operation of Best Buy's accused product,[7] however, are in Northern California.

---

[5]   Mr. Kyle Marvin, who telecommutes from his home in Kingwood, Texas, is knowledgeable about aspects of the Google Data Protocol. Mr. Marvin has only limited knowledge of the aspects of that protocol relevant to the accused products. Google employees at Google's headquarters in Mountain View, California, have at least as much knowledge of that protocol, and have far greater knowledge of the relevant aspects of that protocol. *Id*. ¶¶ 7, 9. One such witness is Jose Casillas. *Id*.

[6]   Google has an office in Austin, Texas, located in the Western District of Texas. The Google employees in the Austin office are not involved with the development or management of any of the Accused Instrumentalities, and are predominantly involved with Google's enterprise sales group for other Google products. Brewer Decl. ¶ 6.

Although Best Buy employs individuals with knowledge of its accused Best Buy Remix product in Minnesota, relevant portions of that accused product were developed and are administered by a third-party, Mashery Inc.  McBrayer Decl. Exh. RM5; Exh. E, Declaration of Oren Michels ¶ 4.  Mashery and its software are, for example, responsible for registering developers and issuing developer keys.  Michels Decl. ¶ 4.  API has accused that functionality in its infringement contentions.  *See, e.g.,* McBrayer Decl. Exh. RM2 at 784, 787.  Mashery's sole location is one mile from the San Francisco courthouse in Northern California. *See* Michels Decl. ¶ 3.  Eight non-party, Mashery witnesses with critical information on how Best Buy's accused product operate work there.  *See id.* ¶ 5.  Best Buy does not have access to that information. Michels Decl. ¶ 6.  Evidence from Mashery, including documents and source code, related to the operation of Best Buy's accused product is similarly located at Mashery's offices in Northern California.  Michels Decl. ¶ 6.

The Best Buy witnesses and documents relevant to Best Buy Remix are in Minnesota. Matheny Decl. ¶¶  3-5; McBrayer Decl. Exh. RM5.   Neither Best Buy nor Mashery have any relevant employees in the Eastern District of Texas and they maintain no relevant documents in this district.  Matheny Decl. ¶¶ 3-5; Michels Decl. ¶ 7-8.

### 4.	API Technologies Has No Witnesses or Known Evidence in This District

API was formed in Dallas to hold the '699 patent and then enforce it in this lawsuit.  *See* McBrayer Decl., Exh. RM3-4.  API identified no witnesses in this district in its initial disclosures.  *Id.,* Exh. RM5.  API identified only one knowledgeable employee, Erich Spangenberg.  *Id.* Mr. Spangenberg resides in Dallas.  *Id.* at Exh. RM6-7.  According to the

---

[7]  API accuses Best Buy's "Best Buy Remix" API of infringement. McBrayer Decl. Exh. RM2 at 4.

Texas Secretary of State, API's corporate location is also in Dallas.[8]  *Id.* at Exhs. RM3-4.  API

possesses no known evidence in the Eastern District of Texas, and has further stated that it

possesses no documents or evidence related to the conception, reduction to practice, design,

development, or prior art sales or disclosures of the claimed invention.  *Id.* at Exh. RM2 at 11.

**C.      There Is No Patent-Related Witness or Known Evidence in This District**

The technology described in the '699 patent was developed and patented by Snap-On

Incorporated, a vehicle tool manufacturer located in Wisconsin but with facilities in Northern

California.  '699 patent; Exh. F, Declaration of Mary McNeill, ¶ 3, 5.  Yahoo! has issued a

subpoena to Snap-On for relevant evidence.  *Id.* ¶ 3; McBrayer Decl. Exh. RM10.  Although

Snap-On continues to search, Defendants understand that Snap-On currently believes it has little

relevant evidence.  McNeill Decl., ¶ 4.  Regardless, Snap-On has no evidence in this district or in

Texas.  *Id.* Similarly, none of the named inventors are located in Texas.  *See* '699 Patent.  One

named inventor, Mr. Michael Baird, resides in Morrow Bay, in Central California.  *Id.*  The

others named inventors are in Ireland, Maine, Arkansas, and Wisconsin.  *Id.*

While none of the witnesses associated with the patent are located in Texas, a number of

non-parties relevant to Defendants' invalidity case are located in California or closer to Northern

California than to this district.  For example, Flexera Software, a company Google recently

subpoenaed, is believed to have relevant prior art information in the Northern District of

California.  McBrayer Decl. ¶ 8.  Wei-Chen Chen, one of the attorneys who prosecuted the

patent-in-suit, resides in Washington State.[9]  *Id.* Exh. RM9.  Another example is Microsoft

Corporation, located in Redmond, Washington, who Yahoo! recently subpoenaed and who is

---

[8]  In its Complaint, API alleges that its principal place of business is in Marshall, Texas.
Texas records, however, indicate that API is headquartered in Dallas.  *Id.* Exhs. RM3-4.

[9]  The other prosecuting attorneys, Stephen A. Becker and Arthur J. Steiner, reside in
Washington DC.  *Id.* Exh. RM9.

believed to have relevant prior art information.[10]  *Id.* Exh. RM10.  Still another example is

Mr. John Biddle, who lives in the Phoenix, Arizona, area and is believed to have knowledge and

documents related to a prior art software distribution system.  *Id.* Exh. RM5.  Phoenix is closer to

Northern California than it is to this Court.  *Id.* Exh. RM11.

Other witnesses believed to have relevant information are Digital River Inc., located in

Minnesota, and GE Healthcare, located in Wisconsin.  *Id.* Exhs. RM5, RM12.

In total, there are at least 25 witnesses in Northern California.  There are no witnesses in

this district.

### III.    THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

**A.    A Case Must Be Transferred When the Witnesses and Evidence Are Concentrated in Another District**

A case should be transferred to another district if it could have been brought in that

district and would be "clearly more convenient" to resolve in that district.  *In re Genentech, Inc.*,

566 F.3d 1338, 1342 (Fed. Cir. 2009) (citing *In re Volkswagen of Amer., Inc.*, 545 F.3d 304, 315

(5th Cir. 2008) (en banc)).  Whether another district is sufficiently more convenient is

determined by analyzing "private" and "public" interest factors.  *In re TS Tech USA Corp.*, 551

F.3d 1315, 1319 (Fed. Cir. 2008).  The private interest factors are:  (1) the relative ease of access

to sources of proof; (2) the availability of compulsory process to secure the attendance of

witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems

that make a trial easy, expeditious, and inexpensive.  *Id.*  The public interest factors are: (1) the

---

[10]  Microsoft is believed to have developed and implemented its Windows Product Activation product before the year 2000.  Google also sent subpoenas to Hunter Engineering, in Missouri, and Digital River, in Minnesota.  *Id.* Exh. RM12.  Hunter Engineering had been unable to find any responsive information, documents, or evidence, and Digital River has not yet completed its preliminary investigation.  *Id.* ¶ 12.

administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law.  *Id.*

"[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). Similarly, although the location of witnesses and evidence may be correlated with a party's corporate location, the private factors focus on the location of witnesses and the ease of access to evidence, not the parties' corporate locations.  *See In re Volkswagen*, 545 F.3d at 316-17.  To the extent the parties' corporate locations are relevant, they are analyzed under the local interest factor.  *See In re Nintendo,* 589 F.3d at 1198; *see also AllVoice Developments v. Microsoft Corp.,* Docket No. 6:09-cv-366 slip. op. 6-8 (E.D. Tex. April 8, 2010) (accounting for the plaintiff's principal place of business only in the local interest factor) (attached as McBrayer Decl. Exh. RM14.)

The proposed transferee forum is "clearly more convenient" when, as here, the relevant evidence is concentrated around one district and there are no witnesses and no evidence in the district deciding the transfer motion.  *See, e.g.*, *In re Nintendo,* 589 F.3d at 1198 (in cases "featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, transfer should be granted"); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009); *In re Genentech,* 566 F.3d at 1348; *In re TS Tech USA Corp.*, 551 F.3d at 1319.  That is true even if the Plaintiff's chosen venue is more "central" with regard to the witnesses and evidence (which is not the case here) – "the centrality of the Court's location is irrelevant to the analysis" when there are no witnesses

- 9 -

residing in the Eastern District of Texas. *eTool Development, Inc. v. National Semiconductor, Corp.*, Docket No. 2:08-cv-196 slip. op. at 4 (E.D. Tex. Mar. 12, 2010) (*citing In re Genentech*, 566 F.3d at 1344) (attached as McBrayer Decl. Exh. RM15).

**B.      This Action "Might Have Been Brought" in the Northern District of California**

This action could have been brought in Northern California.  Venue in patent infringement cases is proper in a "judicial district where the defendant resides."  28 U.S.C. § 1400(b).  Yahoo!, Google, and Android are headquartered in Northern California and were thus subject to personal jurisdiction there when this action was filed.  *See* 28 U.S.C. § 1391(c).

The contacts Best Buy has with this district are the same as those it has with Northern California—it operates retail stores in that district, sells numerous products into that district, and advertises and makes available the accused product to customers in that district.  Moreover, Best Buy's accused product is managed by Mashery, a resident of Northern California.  Michels Decl. ¶ 4.  Whether the transferee district had personal jurisdiction over the plaintiff at the time the suit commenced is irrelevant.  *In re Genentech*, 566 F.3d at 1346.  Accordingly, the Northern District of California is a proper venue for this action.[11]

**C.      The Private Interest Factors Heavily Favor Transfer to Northern California**

The private interest factors all heavily favor transfer.  The majority of the relevant domestic witnesses are in California, and the Northern District has absolute subpoena power over at least nine nonparty witnesses.  No witnesses reside in this district or within this Court's

---

[11]   Whether Northern California would have jurisdiction over parties that have settled is not relevant to this analysis.  *See, e.g. In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982); *cf.  Shifferaw v. Emson USA*, Docket No. 2:09-cv-54, slip op at 7-8 (March 18, 2010) (granting transfer without addressing whether jurisdiction would have been proper over a party whose infringement allegations were severed) (attached as McBrayer Decl. Exh. RM16).

absolute subpoena power.  Similarly, the majority of the evidence relevant to this case is

maintained or accessible in Northern California.  No known evidence exists in this district.

### 1.    The Northern District Of California Is More Convenient for Most of the Witnesses

"The convenience of the witnesses is probably the single most important factor in transfer

analysis."  *In re Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*,

425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  Because Northern California is more convenient for

most of the domestic party witnesses and most of the non-party witnesses relevant to this case,

this important factor weighs heavily in favor of transfer.

Eleven party witnesses with technical knowledge of the Defendants' accused products

reside in the Northern District of California.  Brewer Decl ¶ 7; Sample Decl. ¶ 7.  Yahoo!'s,

Google's, and Android's five witnesses on sales, marketing, and finances are also in Northern

California.  Brewer Decl ¶ 7; Sample Decl. ¶ 8.  The only significant domestic party witnesses

outside of Northern California are Google's single employee in New York, Best Buy's two

identified witnesses in Minnesota, and API's lone witness in Dallas.  *See* Brewer Decl ¶ 7;

McBrayer Decl. Exhs. RM2, RM5, RM7; Matheny Decl. ¶¶ 3-5 .  There are no party witnesses

in this district.  *See id.* Exh. RM5.  The Northern District is more convenient for the party

witnesses.

Northern California is also more convenient for the non-party witnesses.  Eight non-party

witnesses with technical knowledge of Best Buy's accused products are in San Francisco.

Michels Decl. ¶ 4-5.  Flexera Software is also believed to have relevant witnesses in Northern

California.  McBrayer Decl. ¶ 8.  There are no non-party witnesses in this district.

Although there are relevant non-party witnesses outside of Northern California, none are

in this district.  Those witnesses thus cannot support keeping this case in this district on the

theory that this district is more central than Northern California – when there are no witnesses in the Eastern District of Texas, "the centrality of the Court's location is irrelevant to the analysis". *eTool*, Docket No. 2-08-cv-196 at 4; *In re Genentech*, 566 F.3d at 1344.

Even if the centrality of this district is important, the nine domestic non-party witnesses closer to this district cannot outweigh the thirteen domestic non-party witnesses in or closer to Northern California.[12]  Moreover, including party witnesses in that calculation shows that only thirteen domestic witnesses are closer to this district while thirty-two domestic witnesses are in or closer to Northern California.  Because more witnesses live in or closer to Northern California than to this district, the 100-mile rule requires this factor to favor transfer.  *See In re Volkswagen,* 545 F.3d at 317.  Moreover, witnesses near the East Coast, such as Mr. Becker, would be required to travel significant distances regardless of where this case proceeds.  Direct flights are also more likely to be available to witnesses traveling to Northern California as opposed to Marshall, a significant convenience.  *See In re Volkswagen AG.,* 371 F.3d 201, 204 n.3 (5th Cir. 2004).  The burden on those parties should be discounted. *See In re Genentech*, 566 F.3d at 1344, 1346.

This factor weighs heavily in favor of transfer.

**2.      The Northern District of California Possesses Usable Subpoena Power While This Court Does Not**

"The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly."  *Id.* at 1345.  A court has "absolute subpoena power" over a witnesses when that court can compel that witness to attend both depositions and trial.  *In*

---

[12] The thirteen domestic non-party witnesses closer to Northern California include: eight Mashery witnesses, Flexera, Michael L. Baird, Wei-Chen Chen, Microsoft Corp, and John Biddle.  The nine domestic non-party witnesses closer to this district include: four named inventors, Snap-On, Stephen A. Becker, Arthur J. Steiner, Digital River, and GE Healthcare.

*Re Hoffman La-Roche*, 587 F.3d at 1388.  A court therefore has absolute subpoena power over witnesses within 100 miles of the courthouse.  *See id.* at 1387 (citing Rule 45(c)(3)(A)(ii)).

There are at least nine non-party witnesses within 100 miles of the Northern District of California.  Those witnesses include eight witnesses with knowledge of Best Buy's accused product.  Michels Decl. ¶ 4-5.  They also include Flexera Software.  McBrayer Decl. ¶ 8. Northern California has absolute subpoena power over all those witnesses.  There are no relevant witnesses in this district or within 100 miles of the Marshall courthouse.

Because Northern California possesses usable subpoena power while this Court does not, this factor also weighs heavily in favor of transfer.

### 3.     The Majority of the Documentary Evidence is Maintained or Accessible in The Northern District of California

"Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the [defendants] to transport documents that would not be incurred if the case were to proceed in the Northern District of California."  *See In re Genentech,* 566 F.3d at 1346.  As is true in most patent infringement cases, the majority of the relevant evidence will come from Defendants.  *See id.* at 1345.  Yahoo!'s, Google's, and Android's evidence is stored or accessible in Northern California.  Brewer Decl. ¶¶ 10-12; Sample Decl. ¶¶ 11-12.  Evidence related to the operation and administration of Best Buy's accused products is in Minnesota and Northern California.  Michels Decl. ¶ 4, 6; Matheny Decl. ¶ 3-5.  Similarly, the records associated with Flexera Software's prior art are believed to be in Northern California.  McBrayer Decl. ¶ 8.  In contrast, there is no known evidence in this district.  There is also no known evidence in Texas – API stated that it has no documents or evidence related to the conception, reduction to practice, design, development, or prior art sales or disclosure of the claimed invention.  *Id.* Exh. RM2.

41063-0125/LEGAL17941948

Additionally, while there may be some evidence scattered around the country, that evidence will need to be transported regardless of where this case proceeds.  "[I]t is only slightly more inconvenient and costly to require the transportation of those materials to California than Texas."  *See In re Genentech,* 566 F.3d at 1346.  Whether this Court occupies a central location with respect to the evidence is therefore again irrelevant.  *See id.*

Because the majority of the evidence is already located in Northern California, and because there is no known evidence in this district, this factor also weighs in favor of transfer.

**D.     The Public Interest Factors Favor Transfer to the Northern District of California**

Each of the relevant public interest factors either weighs in favor of transferring this case to Northern California, or is neutral.

**1.     Northern California Has a Greater Interest in this Case**

The only connection between this case and the Eastern District of Texas is the fact that Defendants make their products available nationally, including within this district.  This district thus has little interest in having the case tried locally.  *In re TS Tech*, 551 F.3d at 1321.

Conversely, Northern California's connection to this case is strong.  Most of the allegedly infringing products were principally researched, designed, and developed there.  Brewer Decl. ¶ 7; Sample Decl. ¶ 6; Mashery Decl. ¶ 4-6.  As was the case in *In re Hoffman La-Roche*, Northern California's interest in this case is significant because API's allegations call into question the work and reputation of the engineers responsible for that work.  587 F.3d at 1336 (finding that the proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").

Additionally, this case is much like *In re Nintendo*, where the local interest factor favored transfer because one of the parties was located in the proposed transferee forum while there was

no party, witness, or evidence in this district.  589 F.3d 1198.  In this case, three of the five

parties maintain their principal place of business in Northern California while no party, evidence,

or witness is within this district.

This factor weighs heavily in favor of transfer.

### 2.      The Remaining Public Interest Factors Are Neutral

The remaining "public" interest factors are neutral.  The most recent Judicial Caseload

statistics show that the median time to resolve a case is 7.7 months in the Northern District of

California while the median time to resolve a case in this district is 7.9 months.  McBrayer Decl.,

Exhibit RM13.  Northern California and this district resolve cases in similar amounts of time.

*See Vasudevan Software , Inc. v. IBM Corp*., No. 2:09-cv-105, 2009 WL 3784371 (E.D. Tex.

Nov. 10, 2009) (Ward, J.) (granting motion to transfer case to Northern California and finding

that court congestion factor was neutral).

The other public interest factors are also neutral – both courts are familiar with the

substance and application of the federal patent law governing this case, and there are no conflicts

of law to avoid.  *See In re TS Tech*, 551 F.3d at 1320.

### IV.      CONCLUSION

Because the Northern District of California is "clearly more convenient," Defendants

respectfully ask the Court to transfer this case to the Northern District of California pursuant to

28 U.S.C. § 1404(a).


DATED: April 30, 2010                    Respectfully submitted,

                                         */s/    Kevin A. Smith, by permission, V. Ajay Singh*
                                         Charles K. Verhoeven, *pro hac vice*
                                            charlesverhoeven@quinnemanuel.com
                                         Jennifer A. Kash, *pro hac vice*
                                            jenniferkash@quinnemanuel.com
                                         Kevin A. Smith

41063-0125/LEGAL17941948

kevinsmith@quinnemanuel.com
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Otis W. Carroll
    fedserv@icklaw.com
IRELAND CARROLL & KELLEY
6101 S. Broadway, Suite 500
Tyler, TX 75703
Telephone:  (903) 561-1600
Facsimile:  (903) 581-1071

**Counsel for Defendant YAHOO! INC.**


/s/   V. Ajay Singh
Ramsey M. Al-Salam, *pro hac vice*
    Lead Attorney
        Email: RAlSalam@perkinscoie.com
Ryan McBrayer, *pro hac vice*
        Email: RMcBrayer@perkinscoie.com
Vincent Ajay Singh
      State Bar No. 24056333
        Email: ASingh@perkinscoie.com
PERKINS COIE LLP
1201 Third Ave., 48th Floor
Seattle, WA 98101
(206) 359-8000
(206) 359-9000 (facsimile)

Michael E. Jones
    State Bar No. 10929400
        Email: mikejones@potterminton.com
Allen F. Gardner
    State Bar No. 24043679
        Email: agardner@potterminton.com
POTTER MINTON P.C.
110 N. College
500 Plaza Tower
Tyler, TX 75702
(903) 597-8311
(903) 593-0846 (facsimile)

**Counsel for Defendants**
**GOOGLE INC. AND ANDROID, INC.**

41063-0125/LEGAL17941948

/s/   *Melissa M. Wendland, by permission, V. Ajay Singh*

Emmett J. McMahon, *pro hac vice*
   Email: EJMcMahon@rkmc.com
Melissa M. Wendland, *pro hac vice*
   Email: MMWendland@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Ave.
Minneapolis, MN 55402
Telephone: (612) 349-8500
Fax: (612) 339-4181

Rickey L. Faulkner
   State Bar No. 06857095
   Email: rick@faulknerlawoffice.com
LAW OFFICE OF RICKEY L. FAULKNER, P.C.
P.O. Box 3367
Longview, TX 75606
Telephone: (903) 212-3100
rick@faulknerlawoffice.com

**Counsel for Defendant BEST BUY CO., INC.**

41063-0125/LEGAL17941948

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 30, 2010. Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ V. Ajay Singh*
V. Ajay Singh


## CERTIFICATE OF CONFERENCE

I certify that, on April 30, 2010, Ryan McBrayer, counsel for Google, conducted a teleconference with Adam Saxon, Andrew Weiss, and Andrew Spangler, counsel for API Technologies, LLC, as required by Local Rule CV-7. During that conference, the parties discussed the relief requested in this motion in an attempt to resolve this issue without court intervention. Counsel for API informed counsel for Google that the matter could not be so resolved.

*/s/ V. Ajay Singh*
V. Ajay Singh

41063-0125/LEGAL17941948